**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

QUINTON HARRIS; JOHN BAKER;
GEOFFREY MILLER; NORMAN MOUNT;
THOMAS TAYLOR; AND SCOTT ZINN;
individually and on behalf of other similarly
situated,

              Plaintiffs,

v.

UNION PACIFIC RAILROAD COMPANY,

              Defendant.

CASE NO. 8:16cv381-JFB-TDT

**BRIEF IN SUPPORT OF MOTION TO
DISMISS AND/OR STRIKE
PLAINTIFFS' ADA CLASS
ALLEGATIONS**

**I.**

**INTRODUCTION**

Defendant, Union Pacific Railroad Company ("Union Pacific"), respectfully moves, pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), 23(c)(1)(A), and 23(d)(1)(D), to dismiss and/or strike the class action allegations in Plaintiffs' Amended Complaint asserted under the Americans with Disabilities Act, as amended ("ADA") because Plaintiffs are unable to meet the class certification requirements of Rule 23. First, the assessment of whether each putative class member is a "qualified individual with a disability" under the ADA is an assessment involving inquiries too individualized and divergent to warrant certification.  Second, assessing damages for each class member would require detailed, case-by-case fact findings that could not be resolved in a class action format.  As such, Plaintiffs' class action allegations should be dismissed and/or stricken, and Plaintiffs' ADA claims should proceed only with respect to the individual Plaintiffs.

**II.**
**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

**A.      Plaintiffs' Factual Allegations**

Plaintiffs, six Union Pacific employees in different job categories, assert claims under the ADA on behalf of themselves as well as a putative class.[1]  (*See* Plaintiffs' Amended Complaint ("Complaint"), Filing No. 20).  Plaintiffs allege that under Union Pacific's company-wide Fitness-for-Duty program they were required to disclose specified health conditions, "even if the health condition had no impact on the employees' ability to safely perform their jobs." (*Id*. at 2).  According to the Complaint, Union Pacific's Fitness-for-Duty program requires, "among other things, that all employees in Telecom positions, Supply Department field positions, Operating Department field positions (including Transportation, Engineering Services, and Mechanical positions), and Dispatcher positions, disclose 'any new diagnosis, recent events, and/or change in the following conditions,'" labeled as "Reportable Health Events":

**A.  Cardiovascular Conditions including:**
1.      Heart attack (myocardial infarction) that is confirmed or was suspected (including any Emergency Room or hospital care for chest pain or other symptoms of possible heart disease);
2.      Cardiac arrest, requiring cardio-pulmonary resuscitation (CPR) or use of a defibrillator;
3.      Serious cardiac arrhythmias (abnormal heart rhythm) requiring medical treatment;
4.      Stroke or Transient Ischemic Attack (TIA);
5.      Bleeding inside the skull (intracranial) or bleeding inside the brain (intracerebral); or
6.      Heart surgery or invasive cardiovascular procedures (including coronary bypass graft, cardiac catheterization or angioplasty, or placement of a pacemaker, stent, internal cardiac defibrillator, heart

---

[1] Plaintiffs also assert individual and class claims under GINA, as well as individual claims under state laws in Utah, Illinois, and Arizona.  Defendant does not currently seek to dismiss any GINA claims or any individual claims asserted by the six named Plaintiffs.

valve or aortic artery graft).

**B. Seizure or Loss of Consciousness including:**
1.    A seizure of any kind;
2.    Diagnosis of epilepsy (a condition with risk for recurrent seizures);
3.    Treatment with anti-seizure medication to prevent seizures; or
4.    Loss of consciousness (of any duration including episode caused by insulin reaction).

**C. Significant Vision or Hearing Change including:**
1.    Significant vision change in one or both eyes affecting visual acuity (if not correctable to 20/40), color vision or peripheral vision (including visual field loss from retinal disease or treatment);
2.    Eye surgery (including for glaucoma, cataracts, or laser treatment of the cornea or retina);
3.    Significant hearing loss or surgery on the inner ear; or
4.    New use of hearing aids.

**D. Diabetes Treated with Insulin:**
1.    Including Type I and Type II Diabetes Mellitus if insulin is used; or
2.    Severe hypoglycemic event (defined as a hypoglycemic event with: (a) loss of consciousness, (b) substantial mental confusion, drowsiness, or weakness, or (c) requiring the assistance of another person).

**E. Severe Sleep Apnea:**
1.    Diagnosis or treatment of severe obstructive sleep apnea (using CPAP or other treatments).

(*Id*. at 4–5, citing Exhibit A to the Complaint)(emphasis in original).   Plaintiffs further

allege that Union Pacific automatically removed employees disclosing these conditions

from service.  (*Id*. at 2).   Based on these allegations, Plaintiffs assert three types of

class claims under the ADA on behalf of themselves and putative class members.

## B.    Plaintiffs' Claims and Alleged Damages

In Count 1 (the "disparate treatment claims"), Plaintiffs contend that Union Pacific

discriminated against them and the putative "ADA class" by discriminating against "a

qualified individual on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training,

3

and other terms, conditions, and privileges of employment." (*Id.* at 21–22, citing 42 U.S.C. § 12112(a)).  Plaintiffs also allege that Union Pacific discriminated against them and the putative ADA class members by "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the [employer], is shown to be job-related for the position in question and is consistent with business necessity."  42 U.S.C. § 12112(b)(6).

In Count 2 (the "disparate impact claims"), Plaintiffs assert that Union Pacific discriminated against them and the putative ADA class by "utilizing standards, criteria, or methods of administration … that have the effect of discrimination on the basis of disability." (*Id.* at 22–23 (citing 42 U.S.C. § 12112(b)(3))).[2]

In Count 3 (the "unlawful medical inquiry claims"), Plaintiffs allege that Union Pacific's Fitness-for-Duty conducted an unlawful "medical examination" because it made "inquiries of an employee[s] as to whether such employee[s are individuals] with a disability" and this examination was not "job-related and consistent with business necessity." (*Id.* at 24 (citing 42 U.S.C. § 12112(d)(4)(A))).

Plaintiffs seek the following relief: declaratory judgment; injunctive relief; "damages arising from loss of past and future income, and other damages"; "damages for mental anguish and emotional distress"; "costs, disbursements and attorneys' fees"; "all relief available under the ADA … including punitive damages and reinstatement"; "other and further relief available by statute"; and "other and further relief as the Court

---

[2] Under section 12112(b)(3) of the ADA, discrimination need not be intentional—it is enough that the standards, criteria, or methods of administration being used by the employer have a "disparate impact" on individuals with disabilities. *See, e.g.*, *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 385, 121 S. Ct. 955, 974, 148 L. Ed. 2d 866 (2001) (referring to § 12112(b)(3) as "the disparate-impact standard").

deems just and equitable."  (*Id*. at 31).

## C.     Plaintiffs' Proposed ADA Class

Plaintiffs seek to certify a class based on the above-described ADA claims and propose the following definition of the class:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

(*Id*. at 17) (herein the "ADA class").  Plaintiffs allege that certification of this proposed class is appropriate under Federal Rules of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4).  (*Id*. at 18–19).

## III.
## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate where a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Pursuant to Rule 12(f), "the Court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter" upon the defendant's motion prior to filing a responsive pleading.  Fed. R. Civ. P. 12(f).  Rule 23(d)(1)(D) confers to the Court the power to issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  Finally, Rule 23(c)(1)(A) requires the Court to determine "whether to certify the action as a class action" at "an early practicable time."  Fed. R. Civ. P. 23(c)(1)(A).  These rules combined allow the Court to review the class allegations at this early point and strike them from the case because the Court cannot adjudicate the claims on a classwide basis.

"A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the plaintiff cannot meet the requirements for maintaining a class action." *Timoneri v. Speedway, LLC*, --- F.Supp.3d ---, 2016 WL 2756868, at *5 (N.D. Ohio May 12, 2016) (citing *Pilgrim v. Universal Health Card., LLC*, 660 F.3d 943, 949 (6th Cir. 2011)); *Rios v. State Farm Fire and Cas. Co.,* 469 F.Supp.2d 727, 740 (S.D. Iowa, 2007) ("Prior to the class certification stage, a defendant may move to strike class allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.").  "If discovery will not alter the central defect in the class claim, a court may strike class allegations prior to discovery."   *Timoneri*, 2016 WL 2756868 at *5 (internal quotations omitted).  Striking the ADA class action allegations at this stage of the instant case is warranted because Plaintiffs cannot meet the requirements for maintaining an ADA class action, regardless of discovery.

## IV.
## PLAINTIFFS' PUTATIVE ADA CLASS CLAIMS CANNOT MEET THE REQUIREMENTS OF RULE 23 AND SHOULD THEREFORE BE DISMISSED AND/OR STRICKEN

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their … claims as a class action." *Blades v. Monsanto Co.*, 400 F.3d 562, 568 (8th Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  A plaintiff bears the initial burden of showing that the class should be certified under Rule 23.  *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).  Courts should not suppress "doubt" as to whether a Rule 23 requirement is met—no matter the area of substantive law.  *Henke v. Arco Midcon, L.L.C.*, No. 4:10CV86 HEA, 2014 WL 982777, at *3 (E.D. Mo. Mar. 12, 2014) (citing *In re Hydrogen Peroxide Antitrust*

6

*Litigation,* 552 F.3d 305, 321 (3d Cir.2009)); *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011) ("[A]ctual, not presumed, conformance with Rule 23(a) remains … indispensable.").   Because it is clear from Plaintiffs' Complaint that, even after discovery, the proposed class could not meet the Rule 23 requirements, the "rare remedy"[3] of dismissing/striking Plaintiffs' class action allegations is nonetheless appropriate.  *See Semenko v. Wendy's Int'l, Inc.,* No. 2:12-cv-0836, 2013 WL1568407, at *11 (W.D. Pa. April 12, 2013) (striking plaintiff's ADA class allegations because "this is one of those rare cases in which no amount of discovery will demonstrate that the class can be maintained.")

**A.    Rule 23 Class Certification Requirements**

   1.    Rule 23(a)

The Court may certify a class action only if, "after rigorous analysis, [] the prerequisites of Rule 23(a) have been satisfied."  *Bishop v. Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1287-88 (8th Cir. 1982) (citing *General Telephone Co. v. Falcon*, supra, 457 U.S. 147, ---, 102 S.Ct. 2364, 2373, 72 L.Ed.2d 740 (1982)); Fed. R. Civ. P. 23(a).  The Rule 23(a) prerequisites are:  (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation").  Fed. R. Civ. P. 23(a).

---

[3] *Weatherly v. Michael Foods, Inc.*, No. 8:08CV153, 2008 WL 5110917, at *3 (D. Neb. Dec. 2, 2008) ("Striking a plaintiff's class action allegations prior to discovery and the class certification stage is a rare remedy.")

2.    Rule 23(b)

In addition to the Rule 23(a) prerequisites, the proposed class must also meet at least one of three categories under Rule 23(b).  Rule 23(b)(1) permits certification of a class where:

> the prosecution of separate actions by or against individual members of the class would create a risk of
>
>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>>
>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests

Fed. R. Civ. P. 23(b)(1).  "An action certified under Rule 23(b)(1) 'encompasses cases in which the defendant is obliged to treat class members alike or where class members are making claims against a fund insufficient to satisfy all of the claims.'"  *Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 412 (5th Cir.1998).

Class certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive.  *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1121–22 (8th Cir.2005).  Injuries remedied through (b)(2) actions are group, as opposed to individual injuries, so the claims must be cohesive.  *Id.*  The key to whether or not a (b)(2) class should be certified is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Dukes,* 564 U.S. at 360–61, 131 S.Ct. 2541, 180 L.Ed.2d 374.

Finally, a class action may be maintained pursuant to Rule 23(b)(3) where "the

court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Simply showing that common questions of law or fact may exist is insufficient to satisfy Rule 23(b)(3)'s predominance requirement. *Smith v. Brown & Williamson Tobacco*, 174 F.R.D. 90, 94 (W.D. Mo. 1997).  As the Eighth Circuit has explained, "[t]he predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member."  *Halvorson v. Auto–Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) (citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)).

**B.    Plaintiffs' Disparate Treatment Claims Cannot Satisfy Rule 23(a) Because the ADA Requires Each Putative Class Member To Establish He/She Is a "Qualified Person with a Disability"**

**1.    Framework for Plaintiffs' ADA Disparate Treatment Claims**

Plaintiffs have alleged pattern or practice disparate treatment claims under the ADA.[4]   Courts analyze pattern or practice disparate treatment claims using the *Teamsters* framework.  *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 360-61, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (creating a two-step framework for Title VII pattern or practice case brought by the government); *Cooper v. Federal*

---

[4] "The principal difference between individual and pattern-or-practice discriminatory treatment claims is that, although both require an intent to discriminate, an individual claim requires an intent to discriminate against one person, … and a pattern-or-practice claim requires that … discrimination was the company's standard operating procedure, the regular rather than the unusual practice, … and that the discrimination was directed at a class of victims."  *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013) (internal quotations and citations omitted).  "A pattern or practice case is not a separate and free-standing cause of action ..., but is really merely another method by which disparate treatment can be shown."  *Chin v. Port Authority of New York & New Jersey,* 685 F.3d 135, 148–49 (2d Cir.2012) (quoting in a parenthetical *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 355 (5th Cir. 2001)) (internal quotation marks omitted).

*Reserve Bank of Richmond*, 467 U.S. 867, 876 n.9, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (applying the *Teamsters* framework to private class action pattern or practice cases). In the first, "liability" phase of the *Teamsters* framework, the plaintiffs' initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer. *Teamsters*, 431 U.S. at 360. In this phase, the plaintiffs are "not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy." *Id*. The second, "remedial" stage pertains to individual relief and is reached only after liability is established in the first stage. *Id*. at 360-61. Because "the finding of a pattern or practice [of unlawful discrimination] change[s] the position of the employer to that of a proved wrongdoer," there is an inference of discrimination in favor of the individual employee at the second stage of proceedings. *Id*. at 359–60 n.45.

## 2. The Substantive Requirements of the ADA Preclude Certification of Plaintiffs' Disparate Treatment Claims Under Rule 23(a)

In *Hohider v. United Parcel Service, Inc.*, the Third Circuit Court of Appeals considered an interlocutory appeal of the district court's certification of a nationwide class of employees alleging a pattern or practice of unlawful discrimination under Title I of the ADA. *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169 (3d Cir. 2009). The plaintiffs in *Hohider* claimed that UPS discriminated against employees who attempted to return to work after taking leave for medical reasons, including enforcing a "100% release" policy that an employee could not return unless he or she had no medical restrictions. *Id*. at 172. Reversing the district court's certification, the Third Circuit held that "in light of the substantive requirements of the ADA, … [the plaintiffs'] claims cannot be adjudicated within the parameters of Rule 23 such that a determination of classwide

10

liability and relief can be reached." *Id.* at 185. Instead, the court noted that "establishing the unlawful discrimination alleged by plaintiffs would require determining whether class members are 'qualified' under the ADA, an assessment that encompasses inquiries acknowledged by the district court to be too individualized and divergent with respect to this class to warrant certification under Rule 23(a) and (b)(2)." *Id.* at 186.

The *Hohider* court undertook an in-depth examination of the plaintiffs' specific claims under the ADA, distinguishing ADA claims from Title VII claims and observing that the ADA "does not prohibit discrimination against *any individual* on the basis of disability, but, as a general rule, only protects from discrimination those disabled individuals who are able to perform, with or without reasonable accommodation, the essential functions of the job they hold or desire." *Id.* at 191 (emphasis in original). The court stated that all of the plaintiffs' claims "require inquiry into whether class members are 'qualified'—which includes whether they can or need to be reasonably accommodated—before a classwide determination of unlawful discrimination, as contemplated at the first *Teamsters* stage, can be reached." *Id.* at 192. Importantly, the court noted that the class certified by the district court "contain[ed] no unifying or limiting criteria—with respect to employment positions held or desired, for instance, or conditions suffered, or accommodations sought—that potentially would permit classwide evaluation of whether each member of the class is 'qualified' and thus can perform the essential functions of a given job with or without reasonable accommodation." *Id.* at 189. The Third Circuit therefore held:

> [A]ssessment of whether class members are "qualified" is necessary to
> determine whether UPS has engaged in a pattern or practice of unlawful

discrimination and thus can be held liable for violating the ADA with respect to the class. As discussed, in this case the ADA's "qualified" standard cannot be evaluated on a classwide basis in a manner consistent with Rule 23(a) and (b)(2); applying the *Teamsters* evidentiary framework to plaintiffs' claims does not remove this impediment to certification, even if all that is considered is the first, "liability" stage of that framework." ... Because the statutorily required inquiry into qualification is incompatible with the requirements of Rule 23 in this case, and because plaintiffs cannot adjudicate their claims and requested relief without it, the class cannot be certified.

*Id.* at 196.

*Hohider's* reasoning is directly applicable here. As in *Hohider*, it will be necessary to assess whether each class member is "qualified" before Union Pacific can be adjudged liable for violating the ADA. Plaintiff's proposed ADA class is slightly less broad than the proposed class in *Hohider* because the putative ADA class members presumably have at least one of the enumerated "Reportable Health Events," whereas in *Hohider* the class was defined by work absences resulting from any medical condition. Nonetheless, the putative ADA class still lacks any unifying or limiting criteria that could potentially permit classwide evaluation of whether each member of the class has a disability and is "qualified" and able to perform the essential functions of a given job with or without reasonable accommodation.

As Plaintiffs' Complaint makes clear, the Fitness-for-Duty program applied to a large group of positions throughout Union Pacific. Many of the Reportable Health Events (e.g., heart attack, "loss of consciousness") are impairments that would need to be evaluated as to the extent to which they impair each individual plaintiff's major life activities to determine whether they qualify as disabilities under the ADA.[5] Moreover,

---

[5] The lack of a common disability in the proposed ADA class makes this case distinguishable from others in which courts have certified a class based on ADA claims. *See, e.g., Bates v. United Parcel Serv.,* 204 F.R.D. 440 (N.D.Cal.2001) (certifying class of plaintiffs with hearing disabilities); *Wilson v. Pa. State*

even those putative class members with indisputable disabilities would need to show that they were qualified, with or without a reasonable accommodation, to meet their prima facie case. *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 810 (8th Cir. 2015) ("In order to be a qualified individual for the purposes of the ADAAA, the plaintiff must '(1) possess the requisite skill, education, experience, and training for [the] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.'") (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.,* 327 F.3d 707, 712 (8th Cir.2003)).   For these reasons, as with the ADA class claims in *Hohider*, the inquiries into disability and qualification that are statutorily required for Plaintiffs' ADA disparate treatment claims are incompatible with the requirements of Rule 23(a).

No court within the Eighth Circuit has evaluated Rule 23 certification of an ADA pattern-or-practice case similar to *Hohider*.[6]   Nonetheless, the *Hohider* outcome is consistent with other analogous case law within the Circuit.[7]   Thus, in this case the

---

*Police Dep't.,* No. Civ. A. 94–CV–6547, 1995 WL 422750 (E.D. Pa. July 17, 1995) (certifying class of plaintiffs with visual impairments); *Kimble v. Hayes,* Civ. A. No. 89–2644, 1990 WL 20208 (E.D.Pa.1990) (certifying class of candidates for police officer denied employment due to their vision problems).

[6] Judge Smith Camp in *E.E.O.C. v. JBS USA, LLC*, 940 F.Supp.2d 949 (D. Neb. 2013) rejected the defendant's argument that *Hohider* demonstrated that religious accommodation claims were inappropriate for pattern-or-practice treatment.   However, *JBS* is distinguishable.   First and most important, it involved a pattern-or-practice case brought by the EEOC, and the EEOC is not subject to Rule 23's requirements. *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 324, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *E.E.O.C. v. Northwest Airlines, Inc.*, 216 F.Supp.2d 935, 937–38 (D. Minn. 2002).   Second, the proposed class was limited to a single, established religious group (Muslims) with respect to a specific religious belief (daily prayers).   *JBS*, 940 F.Supp.2d at 953.   Thus, the defined class had the "unifying or limiting criteria" that would permit classwide evaluation that the Third Circuit noted was missing in *Hohider* and is missing in the putative ADA class here.

[7] *See, e.g.,  Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 374 (8th Cir. 2013) ("This court has previously rejected certification of classes where trial would require considering varied circumstances."); *In re St. Jude Med., Inc.,* 522 F.3d 836, 838–42 (8th Cir.2008) (reversing grant of certification where class included patients to whom different representations about prosthetic heart valve had been made and where resolution of defendant's liability was dominated by individual issues requiring "plaintiff-by-plaintiff

ADA's "qualified" standard cannot be evaluated on a classwide basis in a manner consistent with the commonality requirement of Rule 23(a), and class certification of Plaintiffs' disparate treatment claims would therefore be inappropriate.

**C.  Neither Can Plaintiffs Certify Their Disparate Treatment Claims Under Rule 23(b)**

Even if Plaintiffs' ADA disparate treatment claims could satisfy the prerequisites of Rule 23(a), certifying the class under Rule 23(b) is improper.  Plaintiffs' assertion in their Complaint that their ADA class claims satisfy all three categories under Rule 23(b) is incorrect.

**1.  Rule 23(b)(1) Is Inapplicable**

Rule 23(b)(1) permits certification of a class where:

the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests

Fed. R. Civ. P. 23(b)(1).  Certifying Plaintiffs' disparate treatment class claims under Rule 23(b)(1)(A) is inappropriate here because all of the proposed class members are seeking the same—not incompatible—relief.  *See In re: St. Jude Med., Inc. Silizone Heart Valves Prods. Liab. Litig.*, MDL No. 01-1396, 2003 WL 1589527 at *17 (D. Minn. 2003) ("The Court finds that this case is not suitable for certification under Rule 23(b)(1)(A) because plaintiffs are not suing for different or incompatible relief."),

---

determinations"); *Darms v. McCulloch Oil Corp.,* 720 F.2d 490, 493 (8th Cir.1983) (affirming denial of class certification where transactions involved different representations and degrees of reliance "and the defenses raised in the case would necessarily vary based on the circumstances of each purchase")).

*reversed on other grounds at* 425 F.3d 1116 (8th Cir. 2005).[8]   Nor would individual adjudication "be dispositive of the interests of the other members not parties to the individual adjudications or ... substantially impair or impede their ability to protect their interests" under Rule 23(b)(1)(B), which typically applies to "limited fund" cases.   Fed. R. Civ. P. 23(b)(1)(B); *see Maxwell v. Tyson Foods, Inc.*, No. 1:08CV00017-JAJ-TJS, 2012 WL 12541110, at *10 (S.D. Iowa July 19, 2012) ("Plaintiff has not demonstrated that Rule 23(b)(1) is satisfied.   While there obviously exists the risk that separate actions will be brought if certification is denied, there is no evidence that individual actions could have an adverse effect on the defendant or result in placing the defendant in a conflicted position.   Likewise, this is not a "limited fund circumstance and there is no evidence that individual actions would be dispositive or impair or impede the interests of non-parties to the individual lawsuits.")   Thus, Plaintiffs' disparate treatment claims do not qualify for certification under Rule 23(b)(1).

2.      **Rule 23(b)(2) Is Inappropriate Because Plaintiffs Seek Damages, Including Backpay, and the Claims Require Individualized Inquiries**

The Supreme Court, in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), clarified that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."   *Dukes*, 564 U.S. at 360–61.   The key to whether or not a 23(b)(2) class should be certified is "the indivisible nature of the injunctive or declaratory remedy

---

[8]  *See also Brown v. Wells Fargo & Co.,* 284 F.R.D. 432, 446 (D. Minn. 2012) (Rule (b)(1)(A) is only appropriate where individual lawsuits would create the possibility of establishing "incompatible standards of conduct" for the defendant) (citing *Reynolds v. Nat'l Football League,* 584 F.2d 280, 283 (8th Cir. 1978)); *Baer v. G & T Trucking Co.,* Civ. No. 03–3460, 2005 WL 563107, at *4 (D. Minn. Mar. 1, 2005) (citations omitted) (declining to certify under Rule 23(b)(1) a proposed class of truck operators alleging discrimination and seeking the same relief); *Fogie v. Rent-a-Center, Inc.,* 867 F.Supp. 1398, 1403 (D. Minn. 1993) ("This case does not fit under 23(b)(1)(A) because plaintiffs are not suing for different or incompatible relief.").

warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id*.

In this case, Plaintiffs seek not only injunctive and declaratory relief, but also damages for lost income, damages for mental anguish and emotional distress, and punitive damages. (Plaintiffs' Complaint at 31). As the Supreme Court put it, "at a minimum, claims for individualized relief (like the backpay at issue here) do not satisfy the Rule." *Dukes*, 564 U.S. at 360 (parenthetical in original). Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant," nor "when each class member would be entitled to an individual award of monetary damages." *Id*. (emphasis in original). Thus, because Plaintiffs seek individualized damages for each putative ADA class member, certification under Rule 23(b)(2) would be inappropriate.

Moreover, even if Plaintiffs were seeking only injunctive or declaratory relief, "the individualized inquiries necessary to determine whether [Union Pacific] has engaged in a pattern or practice of unlawful discrimination under the ADA render certification of this class improper" under Rule 23(b)(2). *Hohider*, 574 F.3d at 200.

### 3. A Rule 23(b)(3) Class May Not Be Certified Because Individual Issues Predominate Over Common Issues in Plaintiffs' ADA Disparate Treatment Claims

Rule 23(b)(3) is applicable only when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The predominance standard for certification imposed by Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Products, Inc. v. Windsor*, 521 U.S.

16

591, 624 (1997).  For all of the reasons already examined above, individual issues—such as questions as to whether putative class members are "qualified individuals with disabilities"—clearly predominate over common issues in Plaintiffs' ADA disparate treatment class claims.

In addition, Plaintiffs seek backpay, and Union Pacific "is entitled to individualized determinations of each employee's eligibility for backpay."  *July v. Board of School Com'rs*, 291 F.R.D. 653, 660 (S.D. Ala. 2013) (quoting *Dukes*, 131 S.Ct. at 2560).  In *July*, the court denied a motion to certify a Title VII pattern or practice claim under Rule 23(b)(3), stating that "the court will have to make a substantial number of individual determinations in deciding which of the minority employees were actual victims of the company's discriminatory practices."  *Id*. (quoting *Teamsters*, 431 U.S. at 371–72).  The court rejected plaintiffs attempt to argue that these individualized questions were not relevant to the second stage of the *Teamsters* analysis.

> *Teamsters'* description of the first phase as the "liability stage" and of the second phase as the "remedial stage" does not magically convert all second-phase questions into damage issues.  As noted, pattern or practice is a theory of intentional discrimination, and an employer cannot be liable to an individual under that theory without a finding of discrimination against that individual.  Such a finding cannot be made until after the individual plaintiff has shown that he or she applied … and until after the defendant has presented its evidence that the plaintiff was or would have been denied the position for non-discriminatory reasons.  These questions are precursors to damages in the sense that all questions concerning liability are, but they are not "damages issues" any more than is the color of the traffic light in a personal injury case.  The *Dukes* Court made this clear when it described the issues to be decided in the second phase as "*liability* for sex discrimination and the backpay owing as a result."

*Id*. (quoting *Dukes*, 131 S.Ct. at 2561) (emphasis added by court in *July*).

The court in *July* further noted that "[i]n addition to these substantial individual

issues concerning liability are the individual issues concerning damages." *Id*. Of particular concern to the court was the plaintiffs' request for emotional damages. *Id*. ("Their effort to recover such damages 'must focus almost entirely on facts and issues specific to individuals rather than the class as a whole," including "how did [the discrimination] affect each plaintiff emotionally and physically at work and at home.") (quoting *Rutstein v. Avis Rent-A-Car Syst., Inc.*, 211 F.3d 1228, 1240 (11th Cir. 2000)). The court noted that evaluating emotional damages would require "individual proof of 'what treatment did each plaintiff receive and at what expense.'" *Id*. (quoting *Allison*, 151 F.3d at 419); *see also, Cooper v. Southern Co.,* 390 F.3d 695, 721 (11th Cir.2004) ("[D]etermining the level of damages to which each class member was entitled plainly would require detailed, case-by-case fact finding, carefully calibrated for each individual employee."), *overruled in part on other grounds, Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457–58, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006).

The analysis in *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 379 (E.D. Ark. 2007) of the plaintiffs' motion for class certification of Title VII pattern or practice and disparate impact claims is also instructive here.  The plaintiffs in *Nelson* requested that the court either certify the class "entirely under Rule 23(b)(3) or that two classes be certified: one under Rule 23(b)(2) for the issues of liability and declaratory and equitable relief, the other under Rule 23(b)(3) on the issue of punitive damages." *Id.* at 378.  In response, the court found that "the superiority and predominance requirements, though not necessary for certification under Rule 23(b)(2), pose an insuperable barrier to certification of Plaintiffs' proposed class under Rule 23(b)(3)." *Id*. at 378–79.

> Regardless of whether Plaintiffs are able to establish a pattern or practice of discrimination at the liability stage, a jury or juries still would have to

> make a 'substantial number of individual determinations' in deciding which of the alleged class members were actual victims and thus entitled to collect a share of the back pay and punitive damages.   Such individual determinations include whether each proposed class member met Wal-Mart's minimum requirements at the time he or she applied … or was deterred from applying; whether each proposed class member applied to a transportation office that was currently hiring at the time of the application; and whether Wal-Mart denied employment to an individual applicant who met the minimum requirements for lawful reasons.   The individual issues involved in these 'mini-trials' for each potential class member would swamp the litigation and, as a result, detract from a class action's superiority over other methods of adjudication.

*Id.* at 379 (internal citations omitted).

Like the plaintiffs in *July* and *Nelson*, Plaintiffs seek compensatory damages (including for emotional distress) and punitive damages.  Thus, the putative ADA class members must establish that each was an actual victim of the allegedly discriminatory application of the Fitness-for-Duty policy and thus entitled to collect a share of the back pay and punitive damages.   These additional individualized inquiries with respect to damages make certification under Rule 23(b)(3) inappropriate.

**D.** **Plaintiffs' ADA Disparate Impact Claims Are Equally Incompatible With Rule 23(b)**

Disparate impact claims invoke an entirely different analysis from disparate treatment.  *See Ratheyon Co. v. Hernandez,* 540 U.S. 44, 52–53, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (holding the Supreme Court has "consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact").

> A plaintiff in a disparate impact case must first establish a prima facie case of disparate impact by identifying a specific employment practice and then presenting statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer adverse employment action because of his or her membership in a protected group. … If the plaintiff succeeds in making this prima facie showing, the burden then shifts to the employer to produce evidence demonstrating a legitimate

19

> business reason for the challenged practice. … If the employer
> successfully establishes a business justification, the plaintiff may still
> prevail by demonstrating that a comparably effective alternative practice
> would produce a significantly smaller adverse impact on the protected
> class.

*Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 953–54 (8th Cir. 2001) (internal

citations omitted).

No case within the Eighth Circuit has analyzed disparate impact claims under

Rule 23(b)(3), and no federal case has directly addressed the certification of an *ADA*

disparate impact claim. However, the court's analysis in *July v. Board of School Com'rs*

is once again analogous. The court rejected certification of the plaintiffs' Title VII

disparate impact claims under Rule 23(b)(3) because of individualized issues to be

addressed with respect to both liability and damages. *July*, 291 F.R.D. at 664.

> After a disparate impact violation is established, in order to obtain
> individual relief a plaintiff must "**show that he or she was within the
> class of persons negatively impacted by the unlawful employment
> practice**," and "then the employer must be given an opportunity to
> demonstrate a legitimate nondiscriminatory reason why, absent the
> offending practice, the individual plaintiff would not have been awarded
> the job or job benefit at issue anyway." … This structure echoes the
> second *Teamsters* phase and, combined with the individualized issues
> concerning damages proves fatal to predominance of the common issues.

*Id*. (emphasis added) (quoting *In re Employment Discrimination Litigation*, 198 F.3d

1305, 1315 (11th Cir. 1999)). In other words, to establish liability, the ADA class

members would each need to demonstrate that they are members of the protected

class, i.e., qualified persons with disabilities. This point is indirectly made by the court in

*United States v. City of New York*, 276 F.R.D. 22, 35 (E.D. N.Y. 2011):

> Disparate impact and pattern-or-practice disparate treatment claims raise
> individual questions of law or fact only after the plaintiff class proves that
> the defendant "acted or refused to act on grounds that apply generally to
> the class." *See* Fed.R.Civ.P. 23(b)(2). In the liability phase, the class
> seeks an indivisible declaration that the employer has discriminated

20

against a protected group **of which the class plaintiffs are members**."
*Id*. (emphasis added).  The court denied the City's motion to decertify the liability-phase class under Rule 23(b)(2) and (c)(4) based on its finding that "[i]individual issues arise in disparate impact and pattern-or-practice disparate treatment cases only if the class establishes the employer's liability and the litigation proceeds to the remedial phase." *Id*. at 34.  Importantly, however, this was true in *City of New York* only because the putative class was comprised entirely of readily identifiable members of a protected class—i.e., African-Americans.  In Plaintiffs' ADA disparate impact claims, as part of the Plaintiffs' burden of proof in establishing liability (not just entitlement to damages), they will need to establish that each ADA class member is a member of the protected class at issue—i.e., qualified individuals with disabilities—which, as already explained above, cannot be evaluated on a classwide basis.  This makes Plaintiffs' disparate impact claims distinguishable from others that have been certified under Rule 23(b).  *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96-CV-8414 KMW, 2015 WL 5603020, at *7 (S.D.N.Y. Sept. 21, 2015) (holding individual hearings on damages after defendant was found liable under a disparate impact theory involving proposed class of African-American and Latino test takers); *Moore v. Napolitano*, 926 F. Supp. 2d 8, 33–34 (D.D.C. 2013) (finding issues as to "whether there were legitimate, nondiscriminatory reasons not to promote a specific" class member were not "relevant to the plaintiffs' disparate impact claim, and thus do not destroy predominance" with respect to African-American Secret Service agents); *Easterling v. Conn. Dep't of Corr.*, 08 Civ. 826, 2011 WL 5864829, at *8 (D.Conn. Nov. 22, 2011) (holding that individual questions regarding class member status, qualifications, and mitigation were less

substantial than the issues that were subject to generalized proof, including whether the challenged physical fitness test had a disparate impact on class of female applicants).

Because of the necessity of these individualized issues under Plaintiffs' disparate impact claims, class certification is inappropriate under Rule 23.

The Court of Appeals of Indiana has further explained why ADA disparate impact claims in particular, like ADA disparate treatment claims, are inappropriate for class certification under Rule 23(b).  Citing *Hohider*, the court stated:

> Regardless of whether, as the plaintiffs contend, disparate-impact claims are generally suited to class actions, this overall suitability does not overcome the problem identified in *Hohider* that unlawful discrimination under the ADA cannot be established without evaluating the persons alleging it.  Indeed, regardless of whether the plaintiffs pursue a theory of disparate treatment or disparate impact, they must preliminarily establish that the alleged discrimination is unlawful.  As in *Hohider,* in the instant case this requires determining whether the plaintiffs are "qualified," which is too individualized an analysis in this broad class to support a class action.

*Perdue v. Murphy*, 915 N.E.2d 498, 509–10 (Ind. Ct. App. 2009).

In addition, some courts have denied certification of a disparate impact class action based on individual inquiries associated with establishing liability for damages with respect to each class member.  *See Stockwell v. City & Cty. of San Francisco*, No. C 08-5180 PJH, 2015 WL 2173852, at *11 (N.D. Cal. May 8, 2015) (finding plaintiffs' putative disparate impact class action failed the Rule 23(b) predominance test where they failed to establish that "the existence of individual injury arising from the defendant's alleged actions (i.e., the defendant's liability to each class member) is "capable of proof at trial through evidence ... common to the class rather than individual to its members."); *cf. Comcast*, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (holding regression model developed by plaintiffs' expert could not be accepted as evidence that damages

were susceptible of measurement across entire class, as required for certification of class, on theory that questions of law or fact common to class members predominated over any questions affecting only individual members).  For all of these reasons, Plaintiffs' disparate impact claims cannot meet the requirements of Rule 23(b), and because the defects cannot be cured through discovery, the disparate impact class allegations should be dismissed and/or stricken.

**E.  Plaintiffs' ADA Unlawful Medical Inquiry Claims Also Cannot Be Certified for Class Treatment Under Rule 23(b)**

Plaintiffs' unlawful medical inquiry claims also cannot be certified under Rule 23(b).  Unlike their disparate treatment and disparate impact claims, Plaintiffs' unlawful medical inquiry claims, "appl[y] to all employees, regardless of whether the employee has an actual disability."  *Parker v. Crete Carrier Corp.*, 158 F.Supp.3d 813, 821 (D. Neb. 2016) (citing *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir.2007) and *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir.2003) ("a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)(a)")).  "To demonstrate compliance with § 12112(d)(4)(A), the employer bears the burden to show the asserted 'business necessity' is vital to the business and the request for a medical examination or inquiry is no broader or more intrusive than necessary."  *Thomas,* 483 F.3d at 527.  "The examination or inquiry need not be the *only way* to achieve a business necessity, but it must be a reasonably effective method to achieve the employer's goals."  *Id*. at 527 (emphasis in original) (citing *Conroy v. N.Y. State Dep't of Corr. Servs.,* 333 F.3d 88, 98 (2d Cir. 2003)).

No cases have directly addressed Rule 23 certification of ADA unlawful medical

inquiry claims.  Nonetheless, the case law analyzing such claims makes clear that to prove liability on a classwide basis, Plaintiffs must show that each ADA class member was injured as a result of Union Pacific's alleged unlawful medical inquiry.  *See Russell v. City of Mobile Police Dep't*, 552 F. App'x 905, 907 (11th Cir. 2014) (granting summary judgment on plaintiff's § 12112(d)(4)(A) claim because she failed to show she was injured from the allegedly improper inquiry) (relying on *Harrison v. Benchmark Elecs. Huntsville, Inc.,* 593 F.3d 1206, 1216–17 (11th Cir.2010), which held that plaintiffs asserting claims under § 12112(d)(2)(A), "a parallel provision" to § 12112(d)(4)(A) with "similar language and virtually identical prohibitions," "must show damages—emotional, pecuniary, or otherwise")).[9]  Indeed, an injury-in-fact for this type of claim requires not only "allegations of mental/emotional distress, mental anguish, stress, and inconvenience" as a result of the improper medical inquiry but also requires "evidence as to the actual existence of such harms." *Tice,* 247 F.3d at 520.  Thus, the question of Union Pacific's liability with respect to each class member for damages under Plaintiffs' unlawful medical inquiry claims would involve the same individualized inquiries as the disparate treatment and disparate impact claims.

Furthermore, Plaintiffs' request for classwide damages based on the unlawful medical inquiry claims would lead to the same individualized inquiries that preclude

---

[9]  *Accord Cossette v. Minn. Power & Light,* 188 F.3d 964, 971 (8th Cir. 1999) (remanding for a determination as to whether the improper medical inquiry caused a "tangible injury" capable of supporting the suit); *Tice v. Centre Area Transp. Auth.,* 247 F.3d 506, 520 (3d. Cir. 2001) (holding that "there is no indication in either the text of the ADA or in its history that a technical violation of § 12112(d) was intended to give rise to damages liability"); *Mickens v. Polk County School Board,* 430 F.Supp.2d 1265, 1278 (M.D. Fla. 2006) ("Damages under section 12112(d) of the ADA must be based not merely on a technical violation of the statute but on some cognizable injury-in-fact of which the statutory violation is a legal and proximate cause."); *Armstrong v. Turner Indus., Inc.,* 141 F.3d 554, 562 (5th Cir.1998) (dismissing for lack of a cognizable injury an ADA claim for damages based on an improper medical examination).

certification of their other ADA claims under Rules 23(b)(2) and 23(b)(3).[10] *Cf., Street v. Diamond Offshore Drilling*, No. Civ.A. 00-1317, 2001 WL 568111, at *10–12 (E.D. La. May 25, 2001) (denying certification of a § 12112(d)(2) preemployment medical inquiry claim under Rule 23(b)(3) because the requests for compensatory and punitive damages, as well as defenses open to defendant that required an individualized inquiry that certain plaintiffs may not have been hired based on facts unrelated to the medical inquiry, demonstrated that the class did not have common issues predominating); *Chedwick v. UPMC*, No. CIV.A. 07-806, 2011 WL 1559792, at *20 (W.D. Pa. Apr. 21, 2011) (rejecting plaintiff's assertion that his claim was being brought under § 12112(d) and denying certification under Rule 23(b)(2) and 23(b)(3) for plaintiff's true claim that defendant wrongfully "used" information to perpetrate a form of "discrimination" prohibited by § 12112(a)); *Perdue v. Murphy*, 915 N.E.2d 498, 507 (Ind. Ct. App. 2009) ("[T]he plaintiffs point to no authority suggesting that [Rule 23(b)(2)], in the ADA/[Rehabilitation Act] context, is relaxed enough to permit class actions when the only unifying criteria for the members of the class are that they are somehow disabled, in need of accommodation, and mutually affected by the policy sought to be enjoined.") Therefore, Plaintiffs' unlawful medical inquiry claims are equally unsuitable for class treatment, and because no amount of discovery could cure the defect, they should be dismissed and/or stricken.

## F.  **Plaintiffs Cannot Certify Their ADA Claims Under Rule 23(c)(4)**

Plaintiffs also allege that class treatment of their ADA claims is appropriate "under Federal Rule of Civil Procedure 23(c)(4) because this is a case in which class

---

[10] For the same reasons addressed above with respect to Plaintiffs' disparate treatment claims, certification of Plaintiffs' disparate impact and unlawful medical inquiry claims would be equally inappropriate under Rule 23(b)(1). *Infra*, section IV.C.1.

adjudication of particular issues would serve the interests of the parties and the Court."
(Complaint at ¶ 125).   Federal courts are split on whether "issue certification" is
permitted as a separate fourth avenue for certification, on equal footing with Rules
23(b)(1), 23(b)(2), and 23(b)(3), where Plaintiffs otherwise fail to meet the requirements
of Rule 23(b)(3), and the Eighth Circuit has previously declined to choose a side.   *In re
St. Jude Med., Inc.,* 522 F.3d 836, 841 (8th Cir. 2008) (citing cases on both sides of the
split); *see also Henke v. Arco Midcon, L.L.C.*, No. 4:10CV86 HEA, 2014 WL 982777, at
*22 (E.D. Mo. Mar. 12, 2014) (declining to use Rule 23(c)(4) as a separate avenue for
certification "absent authority within this Circuit's precedent indicating otherwise").

The Eighth Circuit has also noted that "[e]ven courts that have approved 'issue
certification' have declined to certify such classes where the predominance of individual
issues is such that limited class certification would do little to increase the efficiency of
the litigation."  *In re St. Jude Med., Inc.*, 522 F.3d at 841 (citing *McLaughlin v. American
Tobacco Co.,* 522 F.3d 215, 234 (2d Cir.2008) (issue certification would not "materially
advance the litigation because it would not dispose of larger issues such as reliance,
injury, and damages") and *In re Baycol Prods. Litig.,* 218 F.R.D. 197, 209 (D. Minn.
2003) (concluding that issue certification under Rule 23(c)(4) was not appropriate,
because "individual trials will still be required to determine issues of causation,
damages, and applicable defenses")).   In *Castano v. Am. Tobacco Co.,* 84 F.3d 734,
(5th Cir. 1996), the Fifth Circuit Court of Appeals explained:

> A district court cannot manufacture predominance through the nimble use
> of subdivision (c)(4).   The proper interpretation of the interaction between
> subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must
> satisfy the predominance requirement of (b)(3) and that (c)(4) is a
> housekeeping rule that allows courts to sever the common issues for a
> class trial.   Reading rule 23(c)(4) as allowing a court to sever issues until

26

the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended.

*Castano,* 84 F.3d at 745–46 n. 21 (citations omitted)); *see also Allison,* 151 F.3d at 421–22 (finding plaintiffs' request to "certify[] the first [*Teamsters*] stage of [their Title VII] pattern or practice claim under (b)(3) is foreclosed by *Castano,*" considering that the claim as a whole "implicates predominantly individual specific issues" and "the plaintiffs have not agreed drop their claims for compensatory and punitive damages *as a class action issue*") (emphasis in original).

This Court should decline to certify particular issues within Plaintiffs' ADA claims under Rule 23(c)(4) not only because the Eighth Circuit has not approved such a use of the Rule, but also because there are no common issues that could be separately certified to dispose of larger issues.  As explained in detail above, the questions of both liability and damages under Plaintiffs' ADA claims are riddled with individualized inquiries that would make it nearly impossible to carve out common issues that would assist in the resolution of any of Plaintiffs' ADA class claims.  *Cf., In re Genetically Modified Rice Litig.,* 251 F.R.D. 392, 400 (E.D. Mo. 2008) ("Certification of a limited issues class would lead to procedural difficulties, and a trial limited to common issues would not resolve any individual plaintiff's claims.  This approach would do little if anything to increase the efficiency of this litigation.")  For these reasons, class certification of any issues within Plaintiffs' ADA claims under Rule 23(c)(4) would be inappropriate.

## V.
## <u>CONCLUSION</u>

Plaintiffs' ADA class allegations present one of those rare cases in which discovery will not alter the central defects that preclude certification under Rule 23. Therefore, Union Pacific respectfully requests that the Court dismiss and/or strike the Plaintiffs' class allegations with respect to Plaintiffs' three types of ADA class claims— disparate treatment, disparate impact, and unlawful medical inquiries—and permit the case to move forward solely on Plaintiffs' individual ADA claims and the class and individual GINA claims.

Dated this 21st day of September 2016

UNION PACIFIC RAILROAD
COMPANY, Defendant,


By:   s/ Scott P. Moore
      Scott Parrish Moore (NE# 20752)
      Christopher R. Hedican (NE# 19744)
      Leigh Campbell (MA#682637)
of   BAIRD HOLM LLP
      1700 Farnam Street
      Suite 1500
      Omaha, NE  68102-2068
      Phone: 402-344-0500

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

    James H. Kaster
    David E. Schlesinger
    Bonnie M. Smith
    Charles A. Delbridge
    Jason P. Hungerford
    Nicholas D. Thompson
    Kristoffer S. Mayfield
    Robert L. Schug

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

    None.

                                    s/ Scott P. Moore

DOCS/1730510.6