## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| Quinton Harris, | Case No. 8:16cv381-JFB-SMB |
| Plaintiff, | |
| | **SECOND AMENDED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Union Pacific Railroad Co., | |
| Defendant. | |

Plaintiff Quinton Harris ("Harris") files this Second Amended Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages and other legal and equitable relief resulting from its violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA"), and the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff *et seq.* ("GINA").

## PRELIMINARY STATEMENT

1.      Beginning in 2014, Union Pacific began implementing company-wide changes to its fitness-for-duty program ("Fitness-for-Duty"). As a result of these changes, Union Pacific imposed a blanket requirement that employees in certain positions disclose specified health conditions – even when the condition had no impact on the employee's ability to safely perform their job. Union Pacific also imposed a policy that automatically removed the employees who disclosed these conditions from service, and subjected the employees to a Fitness-for-Duty evaluation, regardless of whether the employee had been safely performing the essential functions of their job. These evaluations do not assess whether an employee is physically capable of performing their job, and Union Pacific does not conduct physical examinations as a matter of course. In addition, Union Pacific

1

routinely disregards the opinions of the employee's treating physicians. Instead, Union Pacific demands medical information from the employee and conducts a "file review," relying on this review to determine that the employee is unfit for duty, or that the employee requires work restrictions that Union Pacific then refuse to accommodate.

2.      In February 2016, Harris and five other employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern or practice of discrimination under the ADA. *See Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). This court certified the class in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision in March 2020.

3.      Union Pacific thereafter moved to sever the cases of the six named plaintiffs, and the motion was granted on August 5, 2020. The Court gave each named plaintiff – including Harris – until August 18, 2020, to file individual complaints.

4.      Harris is a victim of the same discriminatory Fitness-for-Duty policies and practices as alleged in *Harris*, and now brings this individual action. Despite being qualified for his job, and having safely performed in his job with the medical condition at issue, Union Pacific removed him from service and subjected him to a Fitness-for-Duty evaluation. He was then excluded from working at Union Pacific because of his condition.

## JURISDICTION AND VENUE

5.      This action arises under the ADA, 42 U.S.C. § 12101 *et seq.*, and GINA, 42 U.S.C. § 2000ff *et seq.* – both federal laws. As such, jurisdiction is proper under 28 U.S.C. § 1331.

6.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in the District of Nebraska, and because Union Pacific operates its business in the District of Nebraska, and is subject to the Court's personal jurisdiction with respect to this civil action.

## THE PARTIES

7.      Harris resides in Haltom City, Texas. He was an employee of Union Pacific.

8.      Union Pacific is corporation headquartered in Omaha, Nebraska, is the largest railroad in the United States, with tracks covering 23 states in the western two-thirds of the United States.

## FACTUAL ALLEGATIONS

### *UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES*

9.      Union Pacific's Medical Rules, as reviewed and revised on February 1, 2014 (attached as **Exhibit A**), apply to all Union Pacific employees across the country. They outline the Fitness-for-Duty program at Union Pacific

10.      The medical rules require, among other things, that all employees in Telecom positions, Supply Department field positions, Operating Department field positions (including Transportation, Engineering Services and Mechanical positions), and Dispatcher positions disclose "any new diagnosis, recent events, and/or change in the following conditions"—which Union Pacific label "Reportable Health Events":

**A. Cardiovascular Conditions including:**
1. Heart attack (myocardial infarction) that is confirmed or was suspected(including any Emergency Room or hospital care for chest pain or other symptoms of possible heart disease).
2. Cardiac arrest, requiring cardio-pulmonary resuscitation (CPR) or use of a defibrillator.
3.  Serious cardiac arrhythmias (abnormal heart rhythm) requiring medical treatment.

3

    4. Stroke or Transient Ischemic Attack (TIA).
    5. Bleeding inside the skull (intracranial) or bleeding inside the brain (intracerebral).
    6. Heart surgery or invasive cardiovascular procedures (including coronary bypass graft, cardiac catheterization or angioplasty, or placement of a pacemaker, stent, internal cardiac defibrillator, heart valve or aortic artery graft).

**B. Seizure or Loss of Consciousness including:**
    1. A seizure of any kind.
    2. Diagnosis of epilepsy (a condition with risk for recurrent seizures).
    3. Treatment with anti-seizure medication to prevent seizures.
    4. Loss of consciousness (of any duration including episode caused by insulin reaction).

**C. Significant Vision or Hearing Change including:**
    1. Significant vision change in one or both eyes affecting visual acuity (if not correctable to 20/40), color vision or peripheral vision (including visual field loss from retinal disease or treatment).
    2. Eye surgery (including for glaucoma, cataracts, or laser treatment of the cornea or retina).
    3. Significant hearing loss or surgery on the inner ear.
    4. New use of hearing aids.

**D. Diabetes Treated with Insulin:**
    1. 1. Including Type I and Type II Diabetes Mellitus if insulin is used.
    2. Severe hypoglycemic event (defined as a hypoglycemic event with: (a) loss of consciousness, (b) substantial mental confusion, drowsiness, or weakness, or (c) requiring the assistance of another person).

**E. Severe Sleep Apnea:**
    1. Diagnosis or treatment of severe obstructive sleep apnea (using CPAP or other treatments).

(**Exhibit A**.)

11.    Employees who disclose one of these health conditions are required by the Medical Rules to undergo a Fitness-for-Duty evaluation, regardless of whether the condition or treatment affects their ability to perform their jobs. (**Exhibit A.**)

12.    Specifically, the employee must:

**Stay off work** (not to report to work or mark up for work) until Health and Medical Services has completed a Fitness-for-Duty evaluation for that particular health

4

event and has provided the employee's Supervisor with notification that the employee is fit for duty and able to return to his/her job.

**Notify his/her Supervisor** that he/she has had a Reportable Health Event that requires Health and Medical Services to complete a Fitness-for-Duty determination prior to the employee being able to work.

**Notify Health and Medical Services** that he/she has had a Reportable Health Event that requires Health and Medical Services to complete a Fitness-for-Duty evaluation.

(**Exhibit A**.)

13.     Under the Medical Rules, Fitness-for-Duty evaluations are automatic for an employee who transfers "from an existing Union Pacific job assignment to a different job assignment outside of the provisions of the collective bargaining agreement . . . (a) [t]o a Dispatcher position or an Operating Department field position (including all Transportation, Engineering Services, and Mechanical position – agreement and nonagreement), and/or (b) [t]o a position requiring regulatory certification, and/or (c) [t]o other selected positions, where it is determined that a Job Transfer Evaluation is needed, based on physical and functional requirements of the job." (**Exhibit A**.)

14.     Union Pacific's Fitness-for-Duty program is even broader in practice than the Medical Rules reflect. Union Pacific routinely triggers the Fitness-for-Duty process for employees who have never indicated they are unable to perform the essential functions of their jobs, simply because Union Pacific learns that they employee has, or has had in the past, certain health conditions.

15.     These Fitness-for-Duty evaluations are not individualized assessments of the employee's ability to safely perform the essential functions of the employee's job.

16.     Union Pacific does not physically examine the employee, and routinely disregards the opinions of the employee's treating doctor who *has* physically examined the

5

employee.

17.     Rather, Union Pacific's Health and Medical Services Department ("HMS") makes broad requests for medical records from the employee that are likely to include, and often do include, genetic information of the employee such as family medical history.

18.     Once Union Pacific receives the medical information, Union Pacific's HMS Department, located in Omaha, Nebraska and at the time headed by Chief Medical Officer Dr. John Holland, conducts a "file review" and issues a Fitness-for-Duty determination that the employee is either fit for duty, fit for duty with restrictions, or unfit for duty

19.     Union Pacific's HMS Department routinely issues Fitness-for-Duty determinations that disqualify employees from their positions on the basis of their disabilities, even though the disabilities do not affect the employee's ability to safely perform the essential functions of their jobs.

20.     When issuing these Fitness-for-Duty determinations, the HMS department relies on standardized protocols for employees with certain health conditions or treatments.

21.     For example, the HMS Department labels employees with a broad range of health conditions as "sudden incapacitation" risks and issues them standard work restrictions that prohibit the employees from: (1) operating company vehicles; (2) working on or near moving trains; (3) operating cranes, hoists, or machinery; and (4) working at unprotected heights over four feet above the ground.

22.     As a result of the conduct described above, Union Pacific employees who have never had a problem performing the essential functions of their jobs have been forced to disclose sensitive medical information, stay of work without pay, and many have lost their livelihoods.

6

### *PLAINTIFF QUINTON HARRIS*

23.     Harris has been employed by Union Pacific since approximately September 2011, most recently as a Mechanical Service Operator in North Little Rock, Arkansas.

24.     Mechanical Service Operators help move locomotives in the shop area; perform service, cleanup and fueling of locomotives; and operate forklifts.

25.     Harris has epilepsy, which he disclosed to Union Pacific at his time of his hire. It is controlled through medication, and he has not had a seizure in approximately 15 years.

26.     Harris has never had a work incident related to his epilepsy.

27.     In or around February 2014, Harris applied for a transfer to a Train Crew position, an entry-level position which assists with traffic control at railroad terminals.

28.     As part of the application, Union Pacific required Harris to complete a "Health History Form" which asked, among other things, whether Harris had ever had a "seizure of any kind"; a "diagnosis of epilepsy"; or "treatment with anti-seizure medication to prevent seizures."

29.     Harris again disclosed his epilepsy and anti-seizure medication, but specifically stated that he had been seizure-free for multiple years.

30.     Union Pacific took Harris out of service, requested additional medical information, and required him to undergo a Fitness-for-Duty evaluation.

31.     Union Pacific requested medical information from Harris that included, or was likely to include, genetic information within the meaning of GINA.

32.     In a letter dated March 14, 2014, Union Pacific determined that Harris was fit for duty, but had permanent Sudden Incapacitation Restrictions, and Union Pacific could

not accommodate the restrictions. Union Pacific effectively disqualified Harris from both the Train Crew and Mechanical Service Operator positions.

33.    On March 18, 2014, Harris's treating physician notified Union Pacific that Harris was clear to return to work with no restrictions.

34.    Nevertheless, Union Pacific refused to reinstate Harris, and has refused subsequent requests by Harris to return to work as well.

35.    To the extent Harris needed reasonable accommodations, Union Pacific failed to provide them, and failed to even engage in an interactive process regarding what accommodations were possible.

36.    Harris filed a charge of discrimination with the EEOC, asserting claims against Union Pacific under the ADA.

37.    On February 19, 2016, counsel for Harris, on behalf of himself, five additional named plaintiffs, and those similarly situated, filed a First Amended Complaint against Union Pacific in the Western District of Washington, alleging disability discrimination in violation of the ADA, along with state law. The case was thereafter transferred to the District of Nebraska.

38.    This Court certified the class action in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

39.    Thereafter, Union Pacific moved to sever the claims of the six named plaintiffs from the *Harris* case. This Court granted Union Pacific's motion, and ordered each plaintiff to file a separate complaint by August 18, 2020. Harris timely brings the present action.

## CAUSES OF ACTION

### COUNT I
### *VIOLATIONS OF THE ADA*
### *DISABILITY DISCRIMINATION – DISPARATE TREATMENT*

40.     Plaintiff incorporates the foregoing paragraphs by reference.

41.     The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

42.     At all relevant times, Harris was an individual with a disability under the ADA.

43.     At all relevant times, Harris had the requisite skill, experience, education and other job-related requirements of his position, and was therefore a qualified individual under the ADA.

44.     At all relevant times, Harris could perform the essential functions of his position, with or without reasonable accommodations.

45.     Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

46.     Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out . . . an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112 (b)(6).

9

47.     Union Pacific discriminated against Harris on the basis of disability.

48.     Because Union Pacific violated 42 U.S.C. § 12112, Harris suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Harris is also entitled to attorneys' fees and costs incurred in connection with these claims.

49.     Union Pacific committed the above-alleged facts with reckless or deliberate disregard for the rights and safety of Harris. As a result, he is entitled to punitive damages.

**COUNT II**
*VIOLATIONS OF THE ADA*
*DISABILITY DISCRIMINATION – DISPARATE IMPACT*

50.     Plaintiff incorporates the foregoing paragraphs by reference.

51.     Harris is a qualified individual with a disability under the ADA.

52.     Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

53.     Discriminating against a qualified individual on the basis of disability also includes "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability." 42 U.S.C. § 12112(b)(3).

54.     Union Pacific discriminated against Harris on the basis of disability.

55.     Union Pacific's Fitness-for-Duty policies and disproportionately – and adversely – impact qualified individuals with disabilities.

56.     Union Pacific uses qualification standards that screen out or tend to screen

10

out individuals with disabilities.

57.     Union Pacific cannot show that such qualification standards are job-related and consistent with business necessity.

58.     Because Union Pacific violated 42 U.S.C. § 12112, Harris has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Harris is also entitled to attorneys' fees and costs incurred in connection with these claims.

59.     Union Pacific committed the above-alleged facts with reckless or deliberate disregard for the rights and safety of Harris. As a result, he is entitled to punitive damages.

<u>**COUNT III**</u>
***VIOLATIONS OF THE ADA***
***UNLAWFUL MEDICAL INQUIRIES***

60.     Plaintiff incorporates the foregoing paragraphs by reference.

61.     At all relevant times, Harris was an employee of Union Pacific.

62.     Section 12112(d)(4)(A) of the ADA provides:

A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

63.     Union Pacific violated 42 U.S.C. § 12112(d)(4)(A).

64.     Because Union Pacific violated 42 U.S.C. § 12112(d)(4)(A), Harris has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Harris is also entitled to attorneys' fees and costs in connection with these claims.

65.     Union Pacific committed the above-alleged facts with reckless or deliberate disregard for the rights and safety of Harris. As a result, he is entitled to punitive damages.

11

**COUNT IV**
*VIOLATIONS OF THE ADA*
*FAILURE TO ACCOMMODATE*

66.    Plaintiff incorporates the foregoing paragraphs by reference.

67.    Harris is a qualified individual with a disability under the ADA.

68.    Discriminating against a qualified individual with a disability includes:

[N]ot making reasonable accommodations to the known physical or mental
limitations of an otherwise qualified individual with a disability who is an applicant
or employee, unless such covered entity can demonstrate that the accommodation
would impose an undue hardship on the operation of the business of such covered
entity[.]

42 U.S.C. § 12112(b)(5)(A).

69.    Union Pacific discriminated against Harris by failing to provide him a
reasonable accommodation.

70.    Because Union Pacific violated 42 U.S.C. § 12112(b)(5)(A), Harris has
suffered and will continue to suffer loss of income, emotional distress, and other damages
in an amount in excess of $75,000. Harris is also entitled to attorneys' fees and costs in
connection with these claims.

71.    Union Pacific committed the above-alleged facts with reckless or deliberate
disregard for the rights and safety of Harris. As a result, he is entitled to punitive damages.

**COUNT V**
*VIOLATIONS OF GENETIC INFORMATION NONDISCRIMINATION ACT*

72.    Plaintiff incorporates the foregoing paragraphs by reference.

73.    Section 2000ff-1(b) of GINA provides that it "shall be an unlawful
employment practice for an employer to request, require, or purchase genetic information
with respect to an employee or family member."

74.    Requesting genetic information includes "making requests for information

about an individual's current health status in a way that is likely to result in a covered entity obtaining genetic information." 29 C.F.R. § 1635.8(a).

75.     Genetic information includes family medical history. 42 U.S.C. § 2000ff(4); 29 C.F.R. § 1635.3(c)(iii).

76.     Harris was an employee of Union Pacific under GINA.

77.     Union Pacific engaged in a pattern and practice of making broad requests for information about its employees' current health statuses in a way that is likely to result in it obtaining genetic information.

78.     Union Pacific violated 42 U.S.C. § 2000ff-1(b) with respect to Harris.

79.     Because Union Pacific violated 42 U.S.C. § 2000ff-1(b), Harris has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Harris is also entitled to attorneys' fees and costs in connection with these claims.

80.     Union Pacific committed the above-alleged facts with reckless or deliberate disregard for the rights and safety of Harris. As a result, he is entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff prays for judgment against Union Pacific as follows:**

1.     That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA and GINA.

2.     An injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3.  For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00, together with prejudgment interests;

4.  For Harris's costs, disbursements and attorneys' fees pursuant to law;

5.  For an award of punitive damages;

6.  For all relief available under the ADA and GINA;

7.  For such other and further relief available by statute; and

8.  For such other and further relief as the Court deems just and equitable.


Date: August 18, 2020                    **NICHOLS KASTER, PLLP**

                                         s/Lindsey E. Krause_____
                                         James H. Kaster (MN # 0053946)*
                                              kaster@nka.com
                                         David E. Schlesinger (MN # 0387009)*
                                              schlesinger@nka.com
                                         Lindsey E. Krause (MN # 0398431)*
                                              lkrause@nka.com
                                         80 South Eighth Street
                                         4600 IDS Center
                                         Minneapolis, Minnesota 55402-2242
                                         Telephone: (612) 256-3200
                                         Fax:  (612) 338-4878

                                         *admitted in the District of Nebraska

                                         **ATTORNEYS FOR PLAINTIFF**

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 18, 2020 she electronically filed the

forgoing **Second Amended Complaint.**  Notice of this filing will be sent by operation of

the Court's electronic filing system to all parties indicated on the electronic filing receipt.

<u>s/Lindsey E. Krause</u>
Lindsey E. Krause

**Medical Rules**

Roles and Responsibilities

Fitness-for-Duty Evaluations

Health and Medical Services
Fitness-for-Duty Decisions

Medical Records and
Confidentiality of Medical
Information

Dispute Resolution

Appendix A: Definitions

Appendix B: Reportable Health
Events

# Medical Rules

The Medical Rules are established to determine employees' Fitness-for-Duty. Health and Medical Services determines "Fitness for Duty" as the medical and functional, (i.e., physical, mental, and cognitive) ability to:

> In addition to the Medical Rules, employees must also be aware of **Related Policies and Programs.**

Safely perform a job, with or without reasonable accommodations, and

Meet medical standards established by regulatory agencies in accordance with federal and state laws.

The Medical Rules apply to post-offer applicants and all employees. Application of these rules is based on regulatory requirements and safety standards established by Union Pacific.

## Medical Rules

**Roles and Responsibilities**

**Fitness-for-Duty Evaluations**

**Health and Medical Services Fitness-for-Duty Decisions**

**Medical Records and Confidentiality of Medical Information**

**Dispute Resolution**

**Appendix A: Definitions**

**Appendix B: Reportable Health Events**


EXHIBIT
A

# Roles And Responsibilities

The responsibilities of Health and Medical Services, Employees and Post-Offer Applicants with regard to the Medical Rules are outlined below.

*Top

Health and Medical Services
Employees
Post-Offer Applicants

## Health And Medical Services

Health and Medical Services (HMS) is responsible for establishing the scope, content, frequency, and delivery of medical evaluations. HMS is the final authority for determining an employee's Fitness-for-Duty designation. HMS will respond to supervisor concerns regarding an employee's ability to safely perform duties. HMS may delegate responsibilities to medical professionals not employed by Union Pacific. Delegated responsibilities may include but are not limited to the following:

Performance of medical tests and evaluations; and/or

Determination of medical status, and/or

Determination of functional level

*Top

## Employees

All employees are responsible for:

Reporting to work fit for duty to safely perform their jobs with or without reasonable accommodations

Notifying the supervisor when the employee becomes aware of or is concerned that a medical condition or symptom(s) exists which may affect his/her ability to safely perform his/her job

Undergoing a Fitness-for-Duty evaluation, including all medical tests, examinations, and evaluations deemed necessary by various governmental agencies and HMS

Providing, upon request, information from the employees health care provider including, but not limited to: medical documentation pertaining to medical tests, examinations, and/or evaluations, including lists of all prescription and over-the-counter medications taken by the employee.  Employee may be required to provide information on a periodic basis for monitoring of continued fitness-for-duty.

Providing, upon request, a statement from the employee's healthcare provider whether or not, or in what circumstances, any prescriptions or OTC medications currently taken by the employee is likely to impair the employee's perceptual abilities or alertness, or impair mental or physical functioning

Performing all work in conformance with any medical restrictions that HMS has placed upon the employee

Meeting the requirements, in a timely manner, of all federal and state laws and regulations applicable to the employee with regard to medical evaluations and testing and the use of personal protective equipment

Providing accurate information to Health and Medical Services regaring health status and medical treatment

**Dispatchers and Operating Department field employees (including all Transportation, Engineering Services, and Mechanical employees - agreement and nonagreement), all Telecom employees (agreement and nonagreement) and Supply Department Field employees (agreement and nonagreement) must also:**

Notify HMS as soon as practicable if he/she experiences any of the health events listed in Appendix B of these Medical Rules. A reportable health event is defined as a new diagnosis, recent event or change in a prior stable condition, for one of the following (See Appendix B for more detail): a) Cardiovascular Conditions b) Seizure or Loss of Consciousness c) Significant Vision or Hearing Changes d) Diabetes Treated with Insulin e) Severe Sleep Apnea

The employee should simultaneously notify his/her supervisor that he/she has experienced a health event, as defined in Appendix B, that requires a Fitness-for-Duty evaluation by Health and Medical Services prior to performing his/her job.

If the employee experiences a health event noted in Appendix B, the employee should not report for, or perform, his/her job until Fitness-for-Duty clearance has been provided for such work by HMS

*Top

## Post-Offer Applicants

12/5/2015                                                  MyUP

Post-offer Applicants are responsible for:

Undergoing a Fitness-for-Duty evaluation, including all medical tests, examinations, and evaluations deemed
necessary by various governmental agencies and HMS to determine if the applicant is fit for duty.  The Pre-Placement
Medical Evaluation and an appropriate Physical Ability Test may be performed after a conditional job offer has been
made and before the applicant reports to work

 Some costs associated with additional medical testing and evaluations deemed necessary by HMS to determine
medical fitness

Providing accurate information to HMS regarding health status and medical treatment

| Issued   | 3/1/2011 |
|----------|----------|
| Latest   | 2/1/2014 |
| Reviewed | 2/1/2014 |

12/5/2015                                    MyUP

Fitness-for-Duty Evaluations

Health and Medical Services
Fitness-for-Duty Decisions

Medical Records and
Confidentiality of Medical
Information

Dispute Resolution

Appendix A: Definitions

Appendix B: Reportable Health
Events

# Fitness-For-Duty Evaluations

Union Pacific maintains the final authority for determining whether an employee is fit for duty. To determine Fitness-for-Duty, employees may be required to participate in medical tests and evaluations.

Evaluations completed by Health and Medical Services (HMS) may include, but are not limited to various components such as: (1) regulatory medical certification requirements; (2) drug screen; (3) medical, psychological and/or functional evaluations, (4) obtaining additional medical records for review by HMS, and (5) other information as deemed necessary by HMS.

A Fitness-for-Duty evaluation may be initiated by HMS and/or a Supervisor. Employees requesting a Medical Leave may also be required to complete a Fitness-for-Duty Evaluation prior to returning to work or in the event of a change in a Reportable Health Event.

`Top

Health and Medical Services Initiated Fitness-for-Duty
Supervisor Initiated
Employee Requested Medical Leave and Reporting Requirements

## Health And Medical Services Initiated Fitness-For-Duty

### REGULATORY MEDICAL EVALUATIONS

Employees with designated job assignments may be required to have Regulatory Medical Evaluations, based on requirements of federal and/or state government regulations.

Applicable government regulations to be used by HMS as references in carrying out regulatory evaluations, may include, but not be limited to, the following:

**Federal Motor Carrier Safety Administration (FMCSA)**
Compliance with commercial motor vehicle licensing requirement

**Federal Aviation Administration (FAA)**
Compliance with FAA Regulations for Pilots

**Federal Railroad Administration (FRA)**
Compliance with medical certification requirements for Locomotive Engineers, Conductors, and Remote Control Locomotive Operators
Compliance with other FRA medical requirement for covered employees
Compliance with Hearing Conservation Program requirements for covered employees

**Occupational Safety and Health Administration (OSHA)**
Compliance with regulations on worker exposure to potential workplace hazards
Compliance with specific medical certification requirements, including but not limited to, hazardous materials workers and use of respirators and other personal protective equipment

New medical regulatory requirements that come into effect, and apply to Union Pacific employees, will automatically be included in these rules. HMS will apply applicable regulatory requirements regarding medical evaluations for employees. HMS may use additional guidelines or other materials produced by government agencies, or other sources, as references in carrying out regulatory evaluations. For certain jobs or tasks covered by regulatory medical requirements, HMS may utilize medical Fitness-for-Duty requirements that are more rigorous or stringent than the minimal requirements of a regulation.

**Job Transfer**

An employee who transfers from an existing Union Pacific job assignment to a different job assignment outside of the provisions of the collective barganining agreement will be evaluated for Fitness-for-Duty before beginning the new job if the transfer is:

a. To a Dispatcher position or an Operating Department field position (including all Transportation, Engineering Services, and Mechanical position - agreement and nonagreement), and/or

b. To a position requiring regulatory certification, and/or

c. To other selected positions, where it is determined that a Job Transfer Evaluation is needed, based on physical and functional requirements of the job

**Pre-placement (post offer) and Return to Work After 1-Year Absence**

All post-offer applicants will be required to participate in a Pre-Placement Evaluation after a conditional job offer is made,

MyUP

and before the applicant begins work. All post-offer applicants will be subject to a drug screen and evaluations deemed appropriate by HMS. In addition, some employees may also be subject to Regulatory Medical Evaluations based on requirements of federal and/or state government regulations.

An employee absent from work for a period of 12 months or longer for any medical or non-medical reason, must undergo the requirements of a pre-placement (post-offer) evaluation for the position before returning to work. Absences include, but are not limited to:

a. On-Duty injury
b. Off-Duty injury or illness
c. Employee Assistance Program participation
d. Reserve Board assignment
e. Furlough
f. Personal leave
g. Military service

**Other**

Additional Fitness-for-Duty Evaluations are conducted whenever it is deemed necessary to determine an Employee's Fitness for Duty on a case-by-case basis.

`Top

## Supervisor Initiated

Supervisor's have the ability to request a Fitness-for-Duty evaluation based on credible information which raises a concern about the employee's ability to safely perform his/her job duties. The Supervisor may remove the employee from service during the review period.

`Top

## Employee Requested Medical Leave And Reporting Requirements

**AGREEMENT EMPLOYEES**

The purpose of the Medical Leave Evaluation is to determine the medical appropriateness of an employee's requested leave, due to a medical condition of the employee and ensuring the employee is medically and functionally able to perform his/her job.

Pursuant to Union Pacific policies, an employee must provide adequate medical documentation to verify the need for a medical leave:

Leaves less than 30 days can be approved by the appropriate supervisor without Health and Medical Services review.

Leaves requested for 30 days or more or a leave which becomes extended beyond 30 days, shall be referred to Health and Medical Services for review prior to approval by supervisor.

Family Medical Leave Act (FMLA): See the Family Medical Leave Act (FMLA) policy on the Employees site for FMLA associated absences also processed by Health and Medical Services.

**Additional requirements for agreement Telecom employees, Supply Department field employees, and Operating Department field employees** (including all Transportation, Engineering Services and Mechanical employees)

All agreement Telecom employees, Supply Department field Employees, and Operating Department field employees (including Transportation, Engineering Services, and Mechanical employees) **must report** the following reportable health events to Health and Medical Services so that a Fitness-for-Duty evaluation can be completed whether or not a medical leave is requested (See Appendix B for more detail):

Cardiovascular Conditions

Seizure or Loss of Consciousness

Significant Vision or Hearing Changes

Diabetes Treated with Insulin

Severe Sleep Apnea

If an agreement Telecom employee, Supply Department field employee or Operating Department field employee (including all Transportation, Engineering Services, and Mechanical employees) has a reportable health event, at work or off work, the employee must:

**Stay off of work** (not report to work or mark up for duty) until Health and Medical Services has completed a Fitness-for-Duty evaluation for the reportable health event and has provided the employee's supervisor with notification that the employee is fit for duty and able to return to his/her job.

**Notify his/her Supervisor** that he/she has had a reportable health event that requires Health and Medical Services to complete a Fitness-for-Duty evaluation prior to employee returning to his/her job.

**Notify Health and Medical Services** that he/she has had a reportable health event that requires a Fitness-for-Duty

evaluation prior to employee returning to his/her job.

## NONAGREEMENT EMPLOYEES

All Nonagreement Employees requiring a medical absence should:

See the Short-Term/Long-Term Disability (STD/LTD) policy for Nonagreement for health related absences.

**Additional Requirements for nonagreement Telecom employees, nonagreement Supply Department field employees, and Dispatchers and nonagreement Operating Department field employees** (including all Transportation, Engineering Services, and Mechanical)

All nonagreement Telecom employees, nonagreement Supply Department field employees and Dispatchers and nonagreement Operating Department field employees (including all Transportation, Engineering Services, and Mechanical) must report the following reportable health events to Health and Medical Services so that a Fitness-for-Duty evaluation can be completed whether or not a Short Term Disability or other medical leave is requested (See Appendix B for more detail):

Cardiovascular Conditions

Seizure or Loss of Consciousness

Significant Vision or Hearing Changes

Diabetes Treated with Insulin

Severe Sleep Apnea

If nonagreement Telecom employees, nonagreement Supply Department field employees, Dispatchers and nonagreement Operating Department field employees (including all Transportation, Engineering Services, and Mechanical) have a reportable health event, at work or off work, the employee must:

**Stay off work** (not report to work or mark up for duty) until Health and Medical Services has completed a Fitness-for-Duty evaluation for the reportable health event and has provided the employee's supervisor with notification that the employee is fit for duty and able to return to work.

**Notify his/her Supervisor** that he/she has had a reportable health event that requires Health and Medical Services to complete a Fitness-for-Duty evaluation prior to employee returning to his/her job.

**Notify Health and Medical Services** that he/she has had a reportable health event that requires a Fitness-for-Duty evaluation prior to employee returning to his/her job.

Family Medical Leave Act (FMLA): See the Family Medical Leave Act (FMLA) policy for FMLA associated absences also processed by Health and Medical Services.

| Issued | 3/1/2011 |
| Latest | 2/1/2014 |
| Reviewed | 2/1/2014 |

# Health And Medical Services Fitness-For-Duty Decisions

After a Fitness-for-Duty evaluation is complete, Health and Medical Services determines if the employee/applicant is medically and functionally able to safely perform his/her job and makes the following designations:

Fit for Duty

Fit for Duty - With Restrictions

1. A medical work restriction assigned by Health and Medical Services, may include a requirement that the applicant/employee agree to ongoing monitoring of a specific health condition, with ongoing reporting of such information to Health and Medical Services. The treatment for the specific health condition is conducted by the employee's health care provider.

2. Union Pacific determines whether work restrictions can or cannot be reasonably accommodated.

Not Fit for Duty

Health and Medical Services will notify supervisors of the Fitness-for-Duty designation.

| Issued | 3/1/2011 |
|--------|----------|
| Latest | 2/1/2014 |
| Reviewed | 2/1/2014 |

Fitness-for-Duty Evaluations

Health and Medical Services
Fitness-for-Duty Decisions

Medical Records and
Confidentiality of Medical
Information

Dispute Resolution

Appendix A: Definitions

Appendix B: Reportable Health
Events

# Medical Records And Confidentiality Of Medical Information

In the regular course of business, Health and Medical Services maintains confidential medical records for post-offer applicants and employees in accordance with applicable federal and state laws. Copies of documentation existing in those files are not released to anyone outside Health and Medical Services, except in the following instances:

When an employee submits a written request to Health and Medical Services which includes his/her name, employee ID, specific documents required, address where the records may be mailed, and the employee's signature.

When Health and Medical Services receives a release of medical information form signed by the employee stating that the employee has agreed the holder of the release may receive specific documentation contained in the employee's confidential Health and Medical Services medical file.

When Health and Medical Services receives a subpoena or other court order instructing the release of specific records.

When relevant documents from an employee's confidential Health and Medical Services medical record are required in order to prepare an appropriate defense of Union Pacific or any of its personnel.

When necessary to evaluate an employee's claim relating to a personal injury or illness if the employee is represented by legal counsel.

When necessary to provide medical information to an external medical practitioner performing an evaluation at Health and Medical Service's request.

| Issued | 3/1/2011 |
| Latest | 2/1/2014 |
| Reviewed | 2/1/2014 |

Fitness-for-Duty Evaluations

Health and Medical Services
Fitness-for-Duty Decisions

Medical Records and
Confidentiality of Medical
Information

Dispute Resolution

Appendix A: Definitions

Appendix B: Reportable Health
Events

## Dispute Resolution

If Health and Medical Services and the employee's treating medical practitioner disagree on the employee's current medical diagnosis, then the employee may appeal in accordance with applicable collective bargaining agreement(s).

In such an instance, the employee must provide documentation from his/her treating medical practitioner stating the medical justification and procedure(s) used to make the diagnosis.

Upon the Company's receipt of the appropriate medical release authorizing discussion of the employee's medical conditions or case with the appropriate labor union representative and Union Pacific Labor Relations Department representative, the labor union representative, or his designee, may discuss representative(s). If circumstances warrant, Health and Medical Services may request re-evaluation of the employee's case.

Health and Medical Services is the final authority for determining an employee's Fitness-for-Duty designation.

The table below outlines specific circumstances and associated process steps for when there is a disagreement regarding an employee's diagnosis:

| IF... | THEN ... |
|---|---|
| Re-evaluation by a medical practitioner, selected by Health and Medical Services indicates the employee's medical diagnosis is consistent with the Health and Medical Service's decision. | Health and Medical Services issues a Fitness for Duty decision and the supervisor confirms if reasonable accommodation is possible (if applicable). |
| Re-evaluation by a medical practitioner, selected by Health and Medical Services, indicates the employee's medical diagnosis is NOT consistent with the Health and Medical Service's decision. | Health and Medical Services completes a new medical review and issues an updated Fitness-for-Duty statement and advises the supervisor. The supervisor then notifies the employee. |
| The employee or union representative notifies the supervisor that he/she is not satisfied with re-evaluation results. | The supervisor notifies the appropriate Union Pacific Labor Relations representative. Labor Relations will then arrange a joint conference between the employee's union representative, appropriate treating medical practitioner and Health and Medical Services. (The employee may also be requested to participate if requested by Health and Medical Services.) |
| Consensus is reached at a joint conference between the employee, union representative, employee's appropriate treating medical practitioner and Health and Medical Services representative regarding employee's current diagnosis. | Health and Medical Services issues an updated Fitness for Duty statement to the supervisor, and the supervisor confirms whether reasonable accommodation is possible when work restrictions are applicable. |

## Request To Establish Medical Boards

If consensus is not reached during the joint conference, the employee's union representative may present a request to the appropriate Union Pacific Railroad Labor Relations representative, asking to establish a special medical board in accordance with applicable collective bargaining agreement(s), if any. In general, unless specific collective bargaining agreement provisions require otherwise, a special medical board review is conducted in the following manner:

Each physician selected to participate in the special medical board review must: 1) hold a Doctor of Medicine or Doctor of Osteopathic Medicine degree from an accredited medical school; 2) has practiced medicine for at least five years; and 3) is licensed by a State(s) to practice medicine.

Three physicians are chosen, one each by: 1) Union Pacific Railroad; 2) the Union/Employee; and by 3) joint Union Pacific Railroad and Union/Employee agreement.

A written document is prepared describing the appointment of a special medical board, timeframes for conducting the medical board hearing, limitation of evidentiary record to medical records/history of the involved employee and acceptance of its decision as it pertains specifically to the employee's medical diagnosis as binding, is signed by the employee, the employee's union representative, and the appropriate Union Pacific Railroad official(s).

The employee reports for the scheduled medical evaluation(s).

Within 15 days after evaluation of the employee, the special medical board issues a joint report of finding(s) and decision. One copy of the report is provided to: 1) the Union Pacific Railroad Health and Medical Services Department; 2) the employee's union representative, and 3) the employee.

Once the special medical board makes a finding regarding employee's medical diagnosis, Health and Medical Services will issue an updated Fitness for Duty statement and upon issuance of such statement, the special medical board will

MyUP

automatically terminate.  Health and Medical Services is the final authority in determining an employee's Fitness for Duty designation.

All claims for lost time will be handled in accordance with the employee's applicable Collective Bargaining Agreement provisions.

Union Pacific pays for the cost and expenses of its medical representative on the medical board; the union or employee pays for the cost and expenses of its medical representative on the medical board and each party (Union Pacific and Union/Employee) pays 50% of the cost and expenses of the 3rd medical representative on the board.

| Issued | 3/1/2011 |
|--------|----------|
| Latest | 2/1/2014 |
| Reviewed | 2/1/2014 |

MyUP

# Appendix A: Definitions

The following definitions apply to the Medical Rules:

**EMPLOYEE** – Individual employed by Union Pacific Railroad.

**FITNESS FOR DUTY** – Ability to medically and functionally (including physical, mental, and or cognitive function) safely perform the functions of a job, with or without reasonable accommodations and meet medical standards established by regulatory agencies in accordance with federal and/or state laws.

**HEALTH AND MEDICAL SERVICES (HMS)** – Employees and contracted personnel who provide professional services and make decisions on behalf of Union Pacific's Health and Medical Services.

**POST-OFFER APPLICANT** – Individual who has received a conditional offer of employment, and who is not currently working for Union Pacific. A post-offer applicant is required to undergo a Pre-Placement Medical Screening.

**REASONABLE ACCOMODATIONS** – As required by federal and state law, Union Pacific will make reasonable accommodations for persons with statutorily protected disabilities when this will permit the person to perform the essential functions of the job and does not impose an undue hardship on the company.

**REPORTABLE HEALTH EVENT** – Dispatchers and employees in Operating Department field positions (including all Transportation, Engineering Services, and Mechanical employees -agreement and nonagreement), Telecom employees (agreement and nonagreement), and Supply Department Field employees (agreement and nonagreement) must report to Health and Medical Services any new diagnosis, recent events, and/or change in the following conditions, cardiac, seizure or loss of consciousness, significant vision or hearing changes, diabetes treated with insulin, and/or severe sleep apnea. (See Appendix B for more information)

**SUPERVISOR** – Employee's first-line supervisor and other supervisors in the employing department.

| Issued | 3/1/2011 |
| Latest | 2/1/2014 |
| Reviewed | 2/1/2014 |

12/5/2015                                           MyUP

Fitness-for-Duty Evaluations

Health and Medical Services
Fitness-for-Duty Decisions

Medical Records and
Confidentiality of Medical
Information

Dispute Resolution

Appendix A: Definitions

Appendix B: Reportable Health
Events

# Appendix B: Reportable Health Events

The Union Pacific Medical Rules state that Dispatchers and employees in Operating Department field positons (including all Transportation, Engineering Services, and Mechanical employees - agreement and nonagreement), Telecom employees (agreement and nonagreement) and Supply Department field employees (agreement and nonagreement) must report the health events to Health and Medical Services listed at the bottom of the page so that a Fitness-for-Duty evaluation can be done to determine if the employee can safely perform his/her job.  If an employee has a "Reportable Health Event", at work or off work, then the employee must:

**Stay off work** (not to report to work or mark up for work) until Health and Medical Services has completed a Fitness-for-Duty evaluation for that particular health event, and has provided the employee's Supervisor with notification that the employee is fit for duty and able to return to his/her job.

**Notify his/her Supervisor** that he/she has had a Reportable Health Event that requires Health and Medical Services to complete a Fitness-for-Duty determination prior to the employee being able to work.

**Notify Health and Medical Services** that he/she has had a Reportable Health Event that requires Health and Medical Services to complete a Fitness-for-Duty evaluation.

Reportable health event is defined as a new diagnosis, recent event, or change in a prior stable condition, for one of the following:

**A. Cardiovascular Conditions Including:**

1. Heart attack (myocardial infarction) that is confirmed or was suspected (including any Emergency Room or hospital care for chest pain or other symptoms of possible heart disease).

2. Cardiac arrest, requiring cardio-pulmonary resuscitation (CPR) or use of a defibrillator.

3. Serious cardiac arrhythmias (abnormal heart rhythm) requiring medical treatment.

4. Stroke or Transient Ischemic Attack (TIA).

5. Bleeding inside the skull (intracranial) or bleeding inside the brain (intracerebral)

6. Heart surgery or invasive cardiovascular procedures (including coronary bypass graft, cardiac catheterization or angioplasty; or placement of a pacemaker, stent, internal cardiac defibrillator, heart valve or aortic artery graft).

**B. Seizure or Loss of Consciousness Including:**

1. A seizure of any kind.

2. Diagnosis of epilepsy (a condition with risk for recurrent seizures).

3. Treatment with anti-seizure medication to prevent seizures.

4. Loss of consciousness (of any duration including episode caused by insulin reaction).

**C. Significant Vision or Hearing Change Including:**

1. Significant vision change in one or both eyes affecting visual acuity (if not correctable to 20/40), color vision or peripheral vision (including visual field loss from retinal disease or treatment).

2. Eye surgery (including for glaucoma, cataracts, or laser treatment of the cornea or retina).

3. Significant hearing loss or surgery on the inner ear.

4. New use of hearing aids.

**D. Diabetes Treated with Insulin:**

1. Including Type I and Type II Diabetes Mellitus if insulin is used.

2. Severe hypoglycemic event (defined as a hypoglycemic event with: (a) loss of consciousness, (b) substantial mental confusion, drowsiness, or weakness, or (c) requiring the assistance of another person).

**E. Severe Sleep Apnea:**

1. Diagnosis or treatment of severe obstructive sleep apnea (using CPAP or other treatments).

| Issued   | 3/1/2011 |
|----------|----------|
| Latest   | 2/1/2014 |
| Reviewed | 2/1/2014 |